**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTONIO NAVA ROMERO, AKA Antonio Nava, AKA Antonio E. Nava Romero,<br><br>             Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General,<br><br>             Respondent. | Nos.   16-73655<br>             17-70848<br><br>Agency No. A044-099-246<br><br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 9, 2018
San Francisco, California

Before:  D.W. NELSON, KLEINFELD, and W. FLETCHER, Circuit Judges.

Petitioner seeks review of the Board of Immigration Appeals' determination

that his two convictions for shoplifting under Arizona law, ARIZ. REV. STAT. § 13-

1805(A)(1), categorically constitute "crimes involving moral turpitude" under the

---

      [*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii). As in Garcia-Martinez v. Sessions, 886 F.3d 1291 (9th Cir. 2018), the Petitioner's state convictions did not constitute "crimes involving moral turpitude" under BIA precedent at the time he committed them. Id. at 1294. The BIA modified its generic definition of theft "crimes involving moral turpitude" to include Arizona shoplifting after the Petitioner's conduct and after his guilty pleas. See Matter of Diaz-Lizarraga, 26 I. & N. Dec. 847, 849, 852–54 (B.I.A. 2016). We conclude, as we did in Garcia-Martinez, that the BIA erred in determining that Petitioner's offenses were "crimes involving moral turpitude" under its earlier precedent, and that the BIA's new generic definition, announced in Diaz-Lizarraga, does not apply retroactively to the Petitioner's convictions. We grant the petition and remand to the BIA for proceedings consistent with this disposition.

In Garcia-Martinez, the petitioner had pled guilty to multiple theft offenses under Oregon law. 886 F.3d at 1293. We analyzed the Oregon theft statutes and determined that the "statutory scheme does not require a permanent taking of the property in question[.]" Id. at 1294. We noted that "for many decades (at least since 1947)[,] the BIA had held that 'a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to permanently deprive

2

an owner of property.'" Id. Our precedent recognized the same distinction. Almanza-Arenas v. Lynch, 815 F.3d 469, 476 (9th Cir. 2016) (en banc). Thus, we concluded, Garcia-Martinez's theft offenses were not categorically "crimes involving moral turpitude" at the time he committed them. Garcia-Martinez, 886 F.3d at 1294. The BIA has confirmed our interpretation of its earlier precedent. Diaz-Lizarraga, 26 I. & N. Dec. at 849.

After Garcia-Martinez pled guilty to theft, and after the Petitioner in this case pled guilty to shoplifting, the BIA modified its generic definition of theft "crimes involving moral turpitude." Id. at 849–52. Casting aside its old rule on the grounds that "antiquity of our case law is not a sound reason for continuing to adhere to it," the BIA "update[d]" its jurisprudence, "overrul[ing]" its earlier decisions. Id. at 852–55. Instead of requiring an "intent to permanently deprive an owner of property," id. at 849, the BIA now holds that theft offenses categorically constitute "crimes involving moral turpitude" if they require "an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." Id. at 853 (emphasis added).

3

Recognizing that Diaz-Lizarraga "abrupt[ly] change[d] . . . the law," we answered in Garcia-Martinez the question that faces us here: whether prior theft offenses can constitute "crimes involving moral turpitude" when, under BIA precedent at the time they were committed, they were not. 886 F.3d at 1295. We reasoned that although "the BIA can change its rules retroactively through adjudication, . . . that authority is not unconstrained. Rather, we must balance the reliance interest of those to whom the new rule will be applied against the mischief, if any, that would be caused if the rule is not so applied." Id. Applying that reasoning, we found that the balance of interests "weigh[ed] heavily in Garcia's favor[,]" id., and we held that "basic fairness" prevented retroactive application of the BIA's new generic theft definition where Garcia-Martinez "pled and was convicted while the old rule was extant." Id. at 1296.

So too here. Petitioner twice pled guilty to shoplifting under a state statute that does not require a permanent taking. The Arizona shoplifting statute provides

> A. A person commits shoplifting if, while in an establishment in which merchandise is displayed for sale, the person knowingly obtains such goods of another with the intent to deprive that person of such goods by:

4

> 1. Removing any of the goods from the immediate display or from any other place within the establishment without paying the purchase price; or . . . .

ARIZ. REV. STAT. § 13-1805 (emphasis added).

> "Deprive" means to withhold the property interest of another <u>either permanently or for so long a time period that a substantial portion of its economic value or usefulness or enjoyment is lost</u>, to withhold with the intent to restore it only on payment of any reward or other compensation or to transfer or dispose of it so that it is unlikely to be recovered.

ARIZ. REV. STAT. § 13-1801(A)(4) (emphasis added). Arizona courts have recognized that shoplifting under § 13-1805(A) does not require an intent permanently to deprive. See, e.g., Bosworth v. Anagnost, 323 P.3d 736, 739–40 (Ariz. Ct. App. 2014); Sulavka v. State, 221 P.3d 1022, 1025–26 (Ariz Ct. App. 2009). This case is on all fours with Garcia-Martinez. Because Arizona's shoplifting statute does not require a permanent taking, it was not a "crime involving moral turpitude" under BIA precedent at the time Petitioner committed the offenses and pled guilty.

The government urges us to distinguish Garcia-Martinez on the grounds that BIA precedent differentiates between retail theft and other kinds of theft, holding

that for retail theft convictions, like the Petitioner's, intent permanently to deprive may be presumed. See, e.g., Matter of Jurado, 24 I. & N. Dec. 29, 33–34 (B.I.A. 2006). That argument ignores the fact that Diaz-Lizarraga announced the BIA's new rule in the context of a retail theft statute, not a general theft statute. Indeed, Diaz-Lizarraga addressed the statute at issue in this case: Arizona shoplifting under ARIZ. REV. STAT. § 13-1805(A). 26 I. & N. Dec. at 852 ("we now update our existing jurisprudence and hold that the Arizona shoplifting statute at section 13-1805(A) defines a categorical crime involving moral turpitude despite the fact that it does not require the accused to intend a literally permanent taking."). Had the BIA's precedent made it clear that Arizona retail theft categorically constituted a "crime involving moral turpitude," there would have been no reason for the BIA, in addressing Arizona shoplifting, to "update [its] existing jurisprudence" and "overrule[]" its decisions to the contrary. Id. at 852, 855. Instead, as we recognized in Garcia-Martinez, "the BIA did not overturn the requirement that a taking must be literally permanent until Diaz-Lizarraga itself." 886 F.3d at 1295.

The government argues in the alternative that we should apply the BIA's new rule from Diaz-Lizarraga retroactively. For the reasons set forth in Garcia-Martinez, we decline to do so. See id. at 1295–96. The BIA's new rule is an

abrupt about-face from the BIA's (and this court's) longstanding generic definition of theft crimes involving moral turpitude. If applied retroactively to the Petitioner's shoplifting convictions, it would impose a new and severe penalty that he could not have anticipated when he committed the offenses or when he pled guilty to them.

Because we grant Petitioner the relief that he seeks, we do not address his other arguments. His counsel made a compelling argument for holding that the statutory phrase "crime involving moral turpitude" is unconstitutionally vague. See, e.g., Marmolejo-Campos v. Holder, 558 F.3d 903, 909 (9th Cir. 2009) (en banc) (noting that "'moral turpitude' is perhaps the quintessential example of an ambiguous phrase"); see also Arias v. Lynch, 834 F.3d 823, 830, 835 (7th Cir. 2016) (Posner, J., concurring) (noting that the phrase is "stale, antiquated, . . . meaningless[,]" "vague[], rife with contradiction, a fossil, [and] an embarrassment to a modern legal system"). The Supreme Court held to the contrary almost three quarters of a century ago, in Jordan v. De George, 341 U.S. 223, 231–232 (1951), but language, usage, and cultural norms may have changed since then. Our more modest disposition makes it unnecessary to address the question.

The petition is **GRANTED** and the matter **REMANDED** to the BIA for proceedings consistent with this disposition.